CROWELL LAW
Carl D. Crowell, OSB No. 982049
email: carl@crowell-law.com
P.O. Box 923
Salem, OR 97308
(503) 581-1240
Of attorneys for Plaintiff

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **FATHERS & DAUGHTERS NEVADA, LLC,**<br><br>      Plaintiff,<br><br>v.<br><br>**LINGFU ZHANG,**<br><br>      Defendant. | Case No.: 3:16-cv-01443-SI<br><br>FIRST AMENDED COMPLAINT<br><br>COPYRIGHT INFRINGEMENT<br><br>SUBJECT TO STANDING ORDER No. 2016-8<br><br>DEMAND FOR JURY TRIAL |

**COMPLAINT**

Plaintiff Fathers & Daughters Nevada, LLC, ("F&D"), complains and alleges as follows:

**JURISDICTION AND VENUE**

1.      This is a suit for copyright infringement under 17 U.S.C. §§ 101 et seq. ("The Copyright Act").

2.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

3.      Venue in this district is proper pursuant to 28 U.S.C. § 1391(b) and 28 U.S.C. § 1400(a) as the defendant resides in this district.

# PARTIES

## PLAINTIFF

4. Plaintiff F&D is a limited liability company with principal offices in Los Angeles, California.

5. F&D is an affiliate of Voltage Pictures, a production company with a notable catalog of major motion pictures. (www.voltagepictures.com)

## The Rights of F&D

6. *Fathers & Daughters* is a major motion picture released in 2015 about a Pulitzer-winning writer dealing with being a widower and father.

7. *Fathers & Daughters* has been registered with the United States Copyright Office by the owner, F&D, Registration No. PAu 3-762-811 (2015), copy attached as Exhibit 1.

8. Under The Copyright Act, F&D is the proprietor of all copyrights and interests needed to bring suit.

9. The motion picture contains original material that is copyrightable subject matter under the laws of the United States.

10. The motion picture is currently offered for sale in commerce.

11. Defendant had notice of Plaintiff's rights through general publication and advertising and more specifically as identified in the content of the motion picture, advertising associated with the motion picture, and packaging and copies, each of which bore a proper copyright notice.

12. F&D comes to court seeking relief as the motion picture *Fathers & Daughters* is the subject of significant piracy and has been illegally downloaded and distributed hundreds of thousands of times worldwide with many of confirmed instances of infringing activity traced to the State of Oregon.

## THE DEFENDANT

13.     The defendant originally identified as Doe-50.39.189.122 is now know to be Lingfu Zhang, a/k/a Ling Fu Zhang, of Beaverton, Oregon.

14.     As per the original complaint, Plaintiff's investigator first observed the Defendant distributing Plaintiff's motion picture through internet protocol address ("IPA") 50.39.98.47, and then later through IPA 50.39.189.122.

15.     As per the original complaint, Plaintiff's investigator observed the Defendant's IPA's associated with thousands of other copyrighted titles being distributed through the bittorrent network.

*IPA 50.39.98.47*

16.     While assigned IPA 50.39.98.47 Plaintiff's investigator observed over 1,000 infringing actual distributions of copyrighted content from Defendant, including Plaintiff's motion picture.

17.     Plaintiff dispatched 10 notices pursuant to 17 U.S.C. 512(a), commonly called DMCA notices, each to notify the Defendant of the infringing activity through IPA 50.39.98.47 and requesting the Defendant terminate the activity.

18.     Based on the observed activity, it is likely other parties also sent DMCA notices to the Defendant.

19.     Despite the notices the Defendant continued to infringe the rights of Plaintiff and others.

20.     On or about April 30, infringing activity through IPA 50.39.98.47 stopped.

*IPA 50.39.189.122*

21.     Beginning in May, 31, 2016, Plaintiff's investigator began to observe Plaintiff's motion picture being distributed through IPA 50.39.189.122.

22.     While assigned IPA 50.39.189.122, Plaintiff's investigator observed over 1,000 infringing distributions of copyrighted content from Defendant, including Plaintiff's motion picture on hundreds of separate occasions.

23.     Prior to filing suit, Plaintiff dispatched over 30 DMCA notices to the Defendant through IPA 50.39.189.122 over several weeks.

24.     Despite the DMCA notices for the activity through IPA 50.39.189.122 the Defendant continued to infringe the rights of Plaintiff and others.

*IPA Commonality*

25.     Every time a file is initially uploaded to the bittorrent network it is assigned a unique HASH identifier to ensure that anyone wanting that particular unique copy will be joining and trading in the same swarm.  At any one time there may be many versions of any one film being traded though the bittorrent network, each version with a unique HASH, even if visually they are indistinguishable.

26.     The unique HASH for the specific copy of Plaintiff's motion picture being distributed by the Defendant in this action is: B86609FAE1B455F8540DBE1DB48826EC1C0EB16, this HASH being for a specific high quality 1080p Blu-ray copy of Plaintiff's motion picture.

27.     The distributions though IPA 50.39.98.47 and later distributions through IPA 50.39.189.122 were of the same unique HASH.

28.     In addition to this unique HASH for Plaintiff's motion picture, there were a number of other unique HASH's consistently distributed by the Defendant through both IPAs, indicating that the same Defendant was the source of the infringing activity first through IPA 50.39.98.47 and then through IPA 50.39.189.122.

29.     Depending on a number of factors, Plaintiff's investigator is sometimes able to ascertain the specific software used by a party in the peer-to-peer connection with an infringing computer.

30.     In this action each connection to the Defendant's computer through both IPA 50.39.98.47 and then through IPA 50.39.189.122 resulted in the identification of the same client software used by the Defendant.

31.     Based on a number of factors, including the observation of at least four unique HASH's, the same client software, and consistent geolocation to the same general area, Plaintiff formed a good faith belief that the Defendant acting though both IPA 50.39.98.47 and then through IPA 50.39.189.122 was the exact same person and filed suit against Doe-50.39.189.122 alleging the Defendant acted through both IPAs to infringe Plaintiff's rights.

*Continued Infringing Activity*

32.     Plaintiff's initial complaint was filed July 16, 2016 and a subpoena for the identity of the subscriber to both IPA 50.39.98.47 and IPA 50.39.189.122 was dispatched on July 18, 2016.

33.     On August 17, 2016, Internet Service Provider ("ISP") Frontier Communications confirmed the Defendant Lingfu Zhang was assigned IPA 50.39.98.47 from at least November 16, 2015 through May 1, 2016, and was then assigned IPA 50.39.189.122 from at least May 27, 2016 through September 13, 2016.

34.     As a usual course Frontier Communications provides a subscriber notice of any subpoena and notice of a pending claim at least 21 days prior to returning a subpoena response to provide a subscriber with an opportunity to object.

35.     Based on known procedure the Defendant received notice of this action and Plaintiff's claim on or before July 27, 2016.

36. From July 27, 2016 through at least September 13, 2016, the Defendant was observed continuing to distribute Plaintiff's motion picture on over 200 separate occasions.

37. From July 27, 2016 through at least September 13, 2016, Plaintiff dispatched more than 30 additional DMCA notices, yet the Defendant continued to distribute Plaintiff's motion picture.

*Defendant's Move and Identity*

38. Investigation in this matter has revealed that while assigned IPA 50.39.98.47 the defendant resided at 17984 NW Sylvania Ln., Portland, Oregon.

39. On or around May 1 the defendant moved five miles away to 18995 Westword St. SW, Beaverton, Oregon where he was assigned IPA 50.39.189.122.

40. No one other than the Defendant and his wife spent any notable time at both locations and had consistent access to both IPAs.

41. It is implausible that any third party might have unauthorized consistent access to the internet service of the Defendant at both locations that might account for the observed infringing activity.

42. Based on observed activity and the statements of Lingfu Zhang, Lingfu Zhang is the only plausible Defendant.

PEER-TO-PEER INTERNET PIRACY IN GENERAL

*Operation*

43. BitTorrent, also known as peer-to-peer file sharing, has become one of the most common systems for users to illegally dispense and share huge amounts of data in digital format, including motion pictures.

44.     The BitTorrent protocol enables computers to exchange large files (such as motion pictures) without creating a heavy workload for any individual source/computer.  It allows users to interact directly with each other to: (1) make files stored on a user's computer (e.g., motion pictures) available for copying by other users; (2) search for files stored on other computers; and (3) transfer exact copies of files from one computer to another over the Internet.

45.     The use of BitTorrent requires multiple intentional acts.  A user must load specific software, use the software to join the network, search for a file, and then select the file they wish to download.  As each user or peer joins the network and requests a copy of a file, they form a type of social contract to not only download the file, but to be a part of the network to allow the file to be downloaded by others. Each new peer requesting the file receives pieces of the data from each peer who already has downloaded the file, and then in turn makes that content available to others.

46.     Since the BitTorrent protocol also generally limits a peer's ability to download unless he or she also uploads or shares, there is substantial incentive for each peer to remain online and continue to make files available for other peers to download because this will maximize his or her download speed and access to additional content.

47.     The Defendant in this action has been observed as making Plaintiff's motion picture available to others in furtherance of the BitTorrent network.

*The Business of Piracy*

48.     Internet piracy and in particular BitTorrent piracy, though known as peer-to-peer file sharing, is often a for-profit business as many software clients, torrent sites and networks generate millions of dollars in revenue through sales and advertising.

49.     To increase the value of the advertising and sometimes subscription access sold by torrent sites, many parties work to expand the pool of available titles and speed of downloads available by increasing the number of member peers and thus the desirability of their clients and networks.  To accomplish this they often reward participants who contribute by giving them faster download speeds, greater access, or other benefits.

50.     Defendant's participation in the BitTorrent exchange of Plaintiffs' motion pictures is the type of activity that torrent sites use to promote their business and likely directly furthered the for-profit business of at least one torrent site.

51.     Many parties, and possibly Defendant, have been compensated for their participation in expanding the availability of pirated content to others through BitTorrent networks, including Plaintiffs' motion pictures, even if only through being granted greater access to other pirated content.

52.     The use of BitTorrent does more than cause harm through the simple theft of intellectual property.  The BitTorrent distribution of pirated files is a model of business that profits from theft through sales and advertising and provides a system of rewards and compensation to the participants, each of whom contribute to and further the enterprise.

53.     Based on activity observed associated with Defendant's IP address, Defendant is a prolific proponent of the BitTorrent distribution system advancing the BitTorrent economy of piracy.

*Harm to Plaintiff and Others*

54.     Digital piracy, including BitTorrent piracy costs the entertainment industry over $80 billion per year.

55. Nationwide the film and television industry supports over 1.9 million workers and contributes over $19.3 billion in taxes.

56. As noted by Senator Levin in Congressional hearings on peer-to-peer Internet piracy, "In the world of copyright law, taking someone's intellectual property is a serious offense, punishable by large fines. In the real world, violations of copyright law over the Internet are so widespread and easy to accomplish that many participants seem to consider it equivalent to jaywalking – illegal but no big deal. But it is a big deal. Under U.S. law, stealing intellectual property is just that – stealing. It hurts artists, the music industry, the movie industry, and others involved in creative work. And it is unfortunate that the software being used – called 'file sharing' as if it were simply enabling friends to share recipes, is helping create a generation of Americans who don't see the harm."

57. In Oregon the film and television industry provides over 6,800 direct jobs and 2,800 production related jobs paying $269 million in wages.

58. In 2013, in recognition of the growing problems and challenges with counterfeiting and piracy, The Oregon House of Representatives passed House Memorial 2, which made the following findings:

> Whereas the United States and other nations share the challenge of combating intellectual piracy and the counterfeiting of intellectual property such as … films… and technologies that affect the quality of life; and
> Whereas intellectual piracy and counterfeiting have a significant impact on Oregon's economy, and the economies of other states and of nations around the world, which results in job and earnings losses, reduced tax revenues and increased threats to public health and safety; and
> …
> Whereas protecting and enforcing intellectual property rights is crucial to the future of our innovation-based economy; and
> Whereas industries that use intellectual property extensively generate nearly $7.7 trillion in gross output and account for more than 60 percent of total exports from our nation; and

> Whereas industries that use intellectual property extensively … employ more than 19 million Americans, whose salaries average about 60 percent higher than salaries in industries that do not make extensive use of intellectual property; and
> Whereas intellectual property infringement can undermine the nation's economic security; and
>  Whereas violations of intellectual property rights, ambiguities in the law and a lack of enforcement create uncertainty in the marketplace and in the legal system and undermine consumer trust; and
> Whereas intellectual property, including trademarks, [are] essential …; and
> …
> Whereas failing to adequately protect and enforce intellectual property rights will increase counterfeiting and illicit trade;
> …

59.     The impact of piracy is far greater than the mere loss of a single sale or loss due to the distribution of one copy of a motion picture.  Piracy undermines the economy, job base, and tax base on which our citizens rely and promotes a general disregard for the rights of others and the law.

60.     As such it is clear that giving effect to 17 U.S.C. §§ 101 et seq., and the enforcement of intellectual property rights, and in particular the fight against counterfeiting and piracy are critical issues of importance to the both the United States of America and the State of Oregon.

## CAUSE OF ACTION

(Federal Copyright Infringement)

61.      Plaintiff incorporates by reference each and every allegation set forth in the preceding paragraphs.

62.     Defendant, without the permission or consent of Plaintiff, copied and distributed Plaintiff's motion picture through a public bittorrent network.

63.     Defendant's actions infringed Plaintiff's exclusive rights under The Copyright Act.

64. The conduct of the Defendant has been with express and specific notice, willful, intentional, in disregard of and indifferent to Plaintiff's rights with the intent to cause Plaintiff harm and deprive Plaintiff of royalties and the benefit of Plaintiff's copyrights.

65. As a direct and proximate result of the Defendant's conduct, Plaintiff's exclusive rights under 17 U.S.C. § 106 have been violated.

66. Plaintiff is entitled to damages pursuant to 17 U.S.C. § 504 and attorney fees and costs pursuant to 17 U.S.C. § 505.

67. The conduct of the Defendant is causing and, unless enjoined and restrained by this Court, will continue to cause Plaintiff great and irreparable injury.

68. Pursuant to 17 U.S.C. §§ 502 and 503, Plaintiff is entitled to injunctive relief prohibiting the Defendant from further contributing to the infringement of Plaintiff's copyrights, the economy of piracy, and ordering that Defendant destroy all copies of the motion picture made in violation of Plaintiff's rights.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against the Defendant as follows:

A. For a finding that the Defendant willfully infringed Plaintiff's rights;

B. For entry of permanent injunction enjoining the Defendant from direct, indirect or contributory infringement of Plaintiff's rights, except pursuant to a lawful license or with the express authority of Plaintiff. And further directing Defendant to destroy all unauthorized copies of Plaintiff's motion picture;

    C.    For entry of permanent injunction enjoining the Defendant from supporting the BitTorrent economy of piracy by enjoining the Defendant from direct, indirect or contributory infringing file sharing in violation of U.S. copyright law.

    D.    Statutory damages pursuant to 17 U.S.C. § 504.

    E.    For Plaintiff's reasonable costs and attorney fees pursuant to 17 U.S.C. § 505; and

    F.    For such other and further relief as the Court deems proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury.

DATED: October 29, 2016.

Respectfully submitted,

CROWELL LAW

*/s/ Carl D. Crowell*
Carl D. Crowell, OSB No. 982049
carl@crowell-law.com
503-581-1240
Of attorneys for the Plaintiff