David H. Madden
Mersenne Law
9600 S.W. Oak Street
Suite 500
Tigard, Oregon  97223
(503)679-1671
ecf@mersenne.com

# United States District Court

## District of Oregon

## Portland Division

|  |  |
|---|---|
| FATHERS & DAUGHTERS NEVADA, LLC,<br>　　　*Plaintiff*<br><br>　　　*v.*<br><br>**Lingfu ZHANG,**<br>　　　*Defendant* | Civil Action No.:...................3:16-cv-1443-SI<br><br>**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |

---

### Certificate of Compliance

This brief complies with the applicable word-count limitation under LR 7-2(b), 26-3(b), 54-1(c), or 54-3(e) because it contains 2,662 words, including headings, footnotes, and quotations, but excluding the caption, table of contents, table of cases and authorities, signature block, exhibits, and any certificates of counsel.

---

Defendant Lingfu ZHANG submits the following Memorandum in support of his Motion

for Summary Judgment.

## CONTENTS

Introduction .................................................................................................................3

Summary of Argument ...............................................................................................3

Undisputed Material Facts ........................................................................................4

Legal Standards ..........................................................................................................5

Argument.....................................................................................................................6

    Analysis of Plaintiff's Rights under The Copyright Act ...................................8

        Genesis of Plaintiff's Rights .......................................................................8

        Alienation of Plaintiff's Rights ..................................................................8

        Further Alienation of Rights Formerly Held by Plaintiff .......................9

        Still Further Alienation of Rights Formerly Held by Plaintiff................9

        Plaintiff's "Hail Mary" Addendum........................................................ 10

        Plaintiff's Final Confounding Factor ...................................................... 11

Conclusion................................................................................................................. 11

## CASES

*Celotex v. Catrett*
    477 U.S. 317 (1986)................................................................................... 5

*DRK Photo v. McGraw-Hill*
    15-15106 (9th Cir. 2017) .....................................................................6, 7

*Feist Publications v. Rural Telephone Service Company, Inc.*
    499 U.S. 340 (1991)................................................................................3, 6

*Minden Pictures v. John Wiley & Sons*
    795 F.3d 997 (9th Cir. 2015) ................................................................. 9

*Righthaven v. Hoehn*
    716 F.3d 1166 (9th Cir. 2013) ............................................................4, 6

## Introduction

Plaintiff FATHERS & DAUGHTERS NEVADA LLC ("F&D") is a movie production company that was involved in producing a motion picture entitled *Fathers & Daughters* in 2015. In accordance with industry norms, it registered the copyright in the movie upon completion, and then assigned away all rights under the Copyright Act to a distributor. However, unlike most movie production companies, F&D commenced a litigation program targeting Internet subscribers, who F&D claims were infringing its purported rights by downloading the movie over the Internet. The Court may be familiar with these cases, as only a small number of plaintiffs' counsel pursue them nationwide, and all of the cases in this jurisdiction have been filed by a single attorney, Plaintiff's counsel Carl CROWELL.

There are two principal factual questions presented by these cases, paralleling the two elements a plaintiff must prove to make a *prima facie* case of infringement:

1. Plaintiff owns a valid copyright; and

2. Defendant copied constituent elements of the work that are original.

*Feist Publications v. Rural Telephone Service Company, Inc.*, 499 U.S. 340 (1991)

*Feist* examined the level of originality required for a copyrighted work under the second element. The case at bar presents not only the basic question whether Defendant copied any part of the work at all, but also, even more fundamentally, whether Plaintiff owns any assertable rights in the first place.

## Summary of Argument

Plaintiff was the original copyright claimant for the movie, but it has transferred all of its exclusive rights under the Copyright Act to other entities not party to this case. Plaintiff's agreements secure to it *no more than* the right to sue, which is not one of the exclusive rights under

the Copyright Act, and which has repeatedly been found inadequate to confer standing in this Circuit.  Since Plaintiff fails the first prong of a copyright claim under *Feist*, this action should be dismissed with prejudice.  Plaintiff is **not the owner of any relevant exclusive rights** under 17 U.S.C. § 106, and therefore **lacks standing to sue** under *Righthaven LLC v. Hoehn*, 716 F.3d 1166 (9th Cir. 2013).

## Undisputed Material Facts

The following facts are undisputed, and their legal effect is dispositive.  Note that all of the documents referred to have been designated "CONFIDENTIAL" by the producing party, so they are submitted under seal.  The entities (other than Plaintiff) will be referred to by the functional names "EXCLUSIVE SALES AGENT," "DISTRIBUTOR 1" and "DISTRIBUTOR 2," so that the entities' true names would not be divulged if this Memorandum is unsealed.

1.   Plaintiff FATHERS & DAUGHTERS NEVADA LLC registered the copyright in the motion picture *Fathers & Daughters* on 30 March 2015.  (Copyright Certificate, Exhibit A)

2.   Plaintiff appointed EXCLUSIVE SALES AGENT as "[its] exclusive sales agent to negotiate and execute […] agreements […] for the exploitation of the Rights in the Territory during the Term" on 1 April 2013.  (Plaintiff's production, Bates #FnD-16-01443-01201 through -01217, Exhibit B)

3.   Plaintiff vested "sole authority and exclusive discretion" in POA RECIPIENT with respect to investigating, pursuing and settling unlawful copying of the movie by infringers, also on 1 April 2015.  (Plaintiff's production, Bates #FND-16-01443-01431–01432, Exhibit C)

4.   EXCLUSIVE SALES AGENT licensed some rights in the movie to DISTRIBUTOR 1 on 22 September 2015. (DISTRIBUTOR 1 produced LICENSE AGREEMENT; *accord* Plaintiff's production.  Exhibit D).

5.    EXCLUSIVE SALES AGENT licensed all other rights in the movie to DISTRIBUTOR 2 on 2 October 2015. (DISTRIBUTOR 2 production; *accord* Plaintiff's production, Exhibit E)

6.    Plaintiff has admitted that the license agreements reflect the agreement of the parties and that they are presently in effect.  (RFA responses, Exhibit F)

7.    Well after this case had been filed, and after Defendant called the standing defect to Plaintiff's attention, Plaintiff produced an undated agreement among itself, EXCLUSIVE SALES AGENT and DISTRIBUTOR 2 entitled "Anti-Piracy And Rights Enforcement Reservation of Rights Addendum."  (Plaintiff production FND-16-01443-01399, Exhibit G)

Upon information and belief, the Undated Addendum was created after the present action was originally filed, and therefore cannot cure the standing defect.  *See Righthaven*, 716 F.3d at 1171-72 ("permitting standing based on a property interest acquired after filing is not one of" the exceptions to the general principle that "jurisdiction is based on facts that exist at the time of filing.").  In any event, the Undated Addendum does nothing to convey, reconvey, or unconvey any exclusive rights in the copyright to the movie in suit. Its null effect on Plaintiff's standing to sue is discussed in further detail below.

## Legal Standards

Federal Rule of Civil Procedure 56 provides for the entry of summary judgment in favor of a moving party when the party demonstrates that there is no genuine dispute of material fact, and that under those undisputed facts, the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56; *Celotex v. Catrett*, 477 U.S. 317 (1986).  To prevail on its claim of copyright infringement, Plaintiff must prove its ownership of a valid copyright, and infringement by

Defendant of one of its exclusive rights.  *Feist Pubs. v. Rural Tel. Svc. Co. Inc.*, 499 U.S. 340 (1991)

It cannot accomplish the first task, so the question of infringement need not be reached.

A<small>RGUMENT</small>

*Righthaven v. Hoehn*, 716 F.3d 1166 (9th Cir. 2013) and *DRK Photo v. McGraw-Hill* (9th. Cir.

2017)[1] are controlling authority for purposes of the questions of copyright law presented in this

Motion.

*Righthaven* is the lead case in the Ninth Circuit for "copyright troll" actions: infringement

suits against individuals and small entities, which seek statutory damages and which appear to be

driven by plaintiffs' attorney's desire to obtain fees under 17 U.S.C. § 505.  In *Righthaven*, the

plaintiff LLC was founded to "identify copyright infringements on behalf of third parties, receive

'limited, revocable assignment[s]' of those copyrights, and then sue the infringers." *Righthaven* at

1168.  Righthaven found a news article that defendant Hoehn had posted in a comment on a

blog, acquired the right to sue for that infringement from the actual copyright owner, and then

pursued Hoehn.  The *Righthaven* court examined the agreements by which Righthaven purported

to own the exclusive right infringed by Hoehn and determined that, under *Silvers v. Sony Pictures

Entertainment*, 402 F.3d 991 (9th Cir. 2005), the "right" that Righthaven claimed to have, was not

one of the exclusive rights protected by the Copyright Act, and Righthaven therefore lacked

standing to pursue its action.

The more recent *DRK Photo* decision (decided 12 September 2017) considered a different

fact pattern that also resulted in a non-actionable right accruing to a copyright plaintiff.  DRK

Photo is a stock photography agency that markets images created by various photographers.  The

---

[1] The decision in *DRK Photo* issued 12 September 2017.  A copy of the opinion is provided herewith.

*Memorandum in Support of*
*Defendant's Motion for Summary Judgment*

photographers retained rights to their own work, and their agreements with DRK Photo were intended "to effect a transfer [of] copyright ownership to DRK that was sufficient to support its copyright enforcement efforts." *DRK Photo* at 6.

However, following instructions from *Righthaven*, the *DRK Photo* court did not take the assignment language as conclusive, but considered the **substance of the transactions** (*id.* at 17) to determine whether the plaintiff held any exclusive, protectible right under the Copyright Act. The court determined that, to the contrary, the agreements conveyed a **bare right to sue** which is insufficient to confer standing (*id.* at 20).

Turning now to the facts before the Court, Plaintiff F&D has arrived at its ownership of a bare right to sue – a "hunting license" – by a different route than previous plaintiffs, but the final allocation of rights is the same: F&D lacks standing because it does not own an exclusive right protected by the Copyright Act. The Court must consider the substance of the transactions – as set forth in the agreements Plaintiff has entered and acknowledged – and should find that Plaintiff's position is indistinguishable from Righthaven's and DRK Photo's.

The transactions that must be examined are:

1.  Plaintiff registered the copyright in the movie (undisputed material fact #1).

2.  Plaintiff appointed EXCLUSIVE SALES AGENT as the exclusive agent to license the movie (undisputed material fact #2).

3.  EXCLUSIVE SALES AGENT exclusively licensed certain rights in the movie to DISTRIBUTOR 1 (undisputed material fact #4).

4.  EXCLUSIVE SALES AGENT exclusively licensed all other rights in the movie to DISTRIBUTOR 2 (undisputed material fact #5).

Since none of EXCLUSIVE SALES AGENT, DISTRIBUTOR 1 or DISTRIBUTOR 2 are

party to the present action (nor have been party to any of the thirty-two other cases pursued by Plaintiff against hundreds of individuals nationwide), Plaintiff lacks standing.

## Analysis of Plaintiff's Rights under The Copyright Act

### Genesis of Plaintiff's Rights

"Copyright protection subsists […] in original works of authorship fixed in any tangible medium [… including] motion pictures and other audiovisual works." 17 U.S.C. § 102(a)(6). Registration of a copyright is available to an owner, 17 U.S.C. § 408(a), and such registration is a prerequisite to bringing an infringement action, 17 U.S.C. § 411(a); 28 U.S.C. § 1338(a). Plaintiff registered its copyright on 30 April 2014 (undisputed material fact #1). Accordingly, beginning on that date, Plaintiff F&D could have sued for infringements of any of its exclusive rights.

### Alienation of Plaintiff's Rights

Copyright in a work vests initially in the author, 17 U.S.C. § 201(a), but can be transferred in whole or in part by conveyance, 17 U.S.C. § 201(d)(1), which must be in writing, 17 U.S.C. § 204(a).

Plaintiff appointed EXCLUSIVE SALES AGENT by a written agreement "Sales Agency Agreement" dated 1 April 2013. Again, this agreement is marked CONFIDENTIAL, so it is provided under seal as Exhibit B. The agreement relates to the motion picture *Fathers & Daughters*, ¶1, and makes the EXCLUSIVE SALES AGENT the "exclusive sales agent" (¶3c) for "all rights to exploit all linear version of the Picture" (¶3a). EXCLUSIVE SALES AGENT shall "manag[e] proceedings against infringers of the Picture's copyright via Internet and/or Wireless means (e.g.; piracy, illegal downloads, Bit Torrents, etc.)" (¶3d). The term of the sales agreement commences on 1 April 2013 and continues "in perpetuity" (¶6).

The clear effect of this agreement (whose existence and validity are undisputed) is to transfer all rights in the movie from Plaintiff to EXCLUSIVE SALES AGENT.  Starting on 1 April 2013, EXCLUSIVE SALES AGENT could have (and had agreed to) pursue BitTorrent infringers, among others.  Its right to do so is clearly supported by *Minden Pictures v. John Wiley & Sons*, 795 F.3d 997 (9th Cir. 2015):

> Under the Agency Agreements [in *Minden*], Minden is the 'sole and exclusive agent and representative with respect to the Licensing of any and all uses' of the photographs.  That is, the photographers have promised that Minden, and only Minden will have the power, as the photographers' licensing agent, to authorize third parties to reproduce, distribute and display the photographs.
> *Minden Pictures* at 1005.

Here, Plaintiff F&D promised EXCLUSIVE SALES AGENT the same thing, and so EXCLUSIVE SALES AGENT would have been the proper plaintiff (assuming no further alienation of rights had occurred).  Of course, further alienations *have* occurred, as discussed next.

## Further Alienation of Rights Formerly Held by Plaintiff

In accordance with its charge, EXCLUSIVE SALES AGENT entered into a license with DISTRIBUTOR 1 through which DISTRIBUTOR 1 acquired the exclusive right and license to exhibit *Fathers & Daughters* through pay television and subscription video-on-demand services between 1 October 2016 and 31 March 2018 (Exhibit D, ¶3).  EXCLUSIVE SALES AGENT entered into this agreement in its own name, and not as agent or other representative capacity.  This license supports the conclusion that the Sales Agency Agreement is a legitimate and exclusive transfer of rights from Plaintiff to EXCLUSIVE SALES AGENT.

## Still Further Alienation of Rights Formerly Held by Plaintiff

On 2 October 2015, EXCLUSIVE SALES AGENT executed – again, in its own name – a license of "the sole and exclusive right, license and privilege" … "any and all media" … and so on

(Exhibit E, ¶ 7.a), including particularly "Digital Rights": the exclusive right to distribute, license, sublicense [*etc*] any and all means of dissemination to members of the public via the internet, 'World Wide Web' or any other form of digital, wireless and/or Electronic Transmission […]", ¶7.a.v) to DISTRIBUTOR 2.[2]

Under this agreement, Licensor (*i.e.*, EXCLUSIVE SALES AGENT) purports to "retain[] the right to pursue for damages […] those individuals unlawfully downloading and distributing the Picture via the Internet." ¶7.c.iii.

These excerpts of the agreement show that EXCLUSIVE SALES AGENT and DISTRIBUTOR 2 explicitly intended to set up the allocation of rights that fails *Righthaven* and *DPK Photo*. Even if EXCLUSIVE SALES AGENT was the plaintiff in the present action, it would not have standing under clear Ninth Circuit precedent. Plaintiff, being at least two steps removed from possession of the necessary rights, lacks standing as a matter of law.

Finally, although the agreement provides that DISTRIBUTOR 2 is obliged to "support" Licensor (EXCLUSIVE SALES AGENT) in its exercise of "Anti-Piracy Rights," neither EXCLUSIVE SALES AGENT nor DISTRIBUTOR 2 are present in the action. Plaintiff has never timely moved to add them, and has no excuse for its delay. These entities cannot properly be added now, at this late stage, when discovery is closed and dispositive motions are before the Court.

**Plaintiff's "Hail Mary" Addendum**

Near the close of discovery – without explanation for the delay – Plaintiff produced a previously-unmentioned, undated "Anti-Piracy and Rights Enforcement Reservation of Rights

---

[2] Recall that Plaintiff accuses Defendant of copying and distributing the movie over the Internet via a public BitTorrent network. First Amended Complaint, Dkt. #10, ¶62.

Addendum" (Exhibit G).  This agreement purports to bring Plaintiff, EXCLUSIVE SALES AGENT and DISTRIBUTOR 2 together, ostensibly for "clarifiy[ing] and to the extent necessary, modifying" other agreements to "fully authorize" Plaintiff to issue DMCA "Take-Down Notices" and "enforce copyrights."  But the right to send takedown notices is not at issue, and *Righthaven* does not give standing to a party that has no more than a right to "enforce copyrights."  The undated Addendum does not convey or reconvey any exclusive § 106 right to Plaintiff, and even if it did, there is no showing (or even an allegation) that the Addendum was executed before the complaint was filed in this case (or in any of the other cases F&D has filed in this District and elsewhere).

### Plaintiff's Final Confounding Factor

There is one more agreement that bears brief comment.  At the same time as Plaintiff appointed EXCLUSIVE SALES AGENT, it invested POA HOLDER with the "sole authority and exclusive discretion" to investigate, pursue, and litigate or settle claims of infringement (Exhibit C).  This agreement does not affect any § 106 right (the "right to sue" not being one of those rights) or any of the foregoing analysis; it merely muddies the waters.  Plaintiff and its associates have deliberately and intentionally set up a rickety structure of rights where the identity of the proper party is unclear, but one thing is crystal clear: Plaintiff FATHERS & DAUGHTERS NEVADA, LLC is **not** the proper party.  It cannot maintain the present suit.

## Conclusion

Plaintiff represented to this Court that it was the "proprietor of all copyrights and interests need to bring suit," First Amended Complaint (dkt #10, ¶8), notwithstanding that it had – years earlier – transferred away all its exclusive rights under Section 106 of the Copyright Act.  Even

viewing all Plaintiff's agreements in the light most favorable to it, Plaintiff holds nothing more than a bare right to sue, which is not a cognizable right that may be exercised in the courts of this Circuit.  The deficiency is plain on the face of the documents Plaintiff must rely on to establish its ownership, and therefore the case is properly analyzed solely on the evidence and argument now before the Court.  There is no material dispute about the documents; the legal effect of their contents is for the Court to decide; and so the case is in condition for final determination.

Plaintiff's claim should be **dismissed with prejudice** for lack of standing.

Respectfully submitted,


21 September 2017

| | |
|---|---|
| Date | David H. Madden, SBN OR080396 |
| | Attorney for Defendant Lingfu ZHANG |
| | Mersenne Law |
| | 9600 S.W. Oak Street |
| | Suite 500 |
| | Tigard, Oregon 97223 |
| | dhm@mersenne.com |
| | (503)679-1671 |