CROWELL LAW
Carl D. Crowell, OSB No. 982049
email: carl@crowell-law.com
P.O. Box 923
Salem, OR 97308
(503) 581-1240
Of attorneys for Plaintiff F&D

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **FATHERS & DAUGHTERS NEVADA, LLC,**<br><br>Plaintiff,<br><br>v.<br><br>**LINGFU ZHANG,**<br><br>Defendant. | Case No.: 3:16-cv-01443-SI<br><br>PLAINTIFF'S RESPONSE IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT<br>(Ecf. 36); |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO
MOTION FOR SUMMARY JUDGMENT**

**I.     INTRODUCTION**

Plaintiff Fathers & Daughters Nevada, LLC, ("F&D" or "Plaintiff") initially filed its claim against a then unknown party that was observed persistently using two different Internet protocol addresses ("IPA's") at different times to infringe its rights in the motion picture *Fathers & Daughters* through the BitTorrent network. ECF 1. During the course of this case Plaintiff was able to confirm that both IPAs were assigned to the Defendant as alleged. Indeed, discovery established that Defendant used the first IPA at a particular residence for an extended period of time and then moved miles away and continued to infringe Plaintiff's work using a second IPA

at his new residence, even after notice of this action. Left with no way to assert the garden variety 'a neighbor did it,' 'open Wi-Fi,' or 'guest infringer' defenses, Defendant now comes to this Court with a specious argument, which on examination, fails. Specifically, Defendant's Motion for Summary Judgment asks the Court to find Plaintiff F&D, the undisputed sole owner of the motion picture *Fathers & Daughters*, does not have standing to bring a claim for copyright infringement of its own motion picture.

Defendant wrongly argues Fathers & Daughters Nevada, LLC granted all of its exclusive rights to other parties and only reserved itself the 'right to sue.' However, Defendant's brief fails to cite *any* language in *any* agreement which establishes that Plaintiff assigned or transferred all of its exclusive rights under 17 U.S.C. §106, and on examination it becomes apparent that some of the agreements Defendant relies on do not transfer or impact any rights under the Copyright Act and are completely irrelevant. The agreements Defendant relies on, at most, do nothing more than grant limited and restricted licenses while specifically retaining ownership and exclusive rights such as digital BitTorrent distribution rights to F&D.

For the foregoing reasons, as explained more fully below, and supported by the co-filed declaration of the Vice President of producer Voltage Pictures Michael Wickstrom, and the exhibits submitted by Defendant (ECF 36, Exhibits A – F), Plaintiff respectfully requests this Court deny Defendant's Motion for Summary Judgment.

## II. LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. "The moving party must show an absence of an issue of material fact." *Siwiec v.*

*Thompson*, Nos. CV-02-454-ST, CV 02-460-ST, 2004 U.S. Dist. LEXIS 22882, at *4 (D. Or. Nov. 3, 2004). "Once the moving party does so, the non-moving party must go beyond the pleadings and designate specific facts showing a genuine issue for trial." *Siwiec v. Thompson*, Nos. CV-02-454-ST, CV 02-460-ST, 2004 U.S. Dist. LEXIS 22882, at *4 (D. Or. Nov. 3, 2004). "[A]t summary judgment, the judge must view the evidence in the light most favorable to the nonmoving party: if direct evidence produced by the moving party conflicts with direct evidence produced by the nonmoving party, the judge must assume the truth of the evidence set forth by the nonmoving party with respect to that fact. Put another way, if a rational trier of fact might resolve the issue in favor of the nonmoving party, summary judgment must be denied." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Asso.*, 809 F.2d 626, 630-31 (9th Cir. 1987).

### III. EVIDENTIARY OBJECTIONS

#### a. Conferral

The parties have conferred on these evidentiary objections and have been unable to reach any agreement.

#### b. Objections

Defendant has submitted a number of documents as evidence to support his arguments when it reality they are submitted only to confuse matters and hide the simple fact F&D is the sole owner of the copyrights to the motion picture *Fathers & Daughters*. The authenticity of the documents submitted is not in dispute, but to provide clarity F&D objects on the basis of relevance to a number of the submitted documents, including:

### i. EXHIBIT C - Plaintiff's Power of Attorney / Anti-Piracy Authorization

The Power of Attorney document, identified as Exhibit C to Defendant's Motion, does nothing more than direct Voltage Pictures, a producer of the motion picture, to represent and make decisions on behalf of F&D. Not only does this document not transfer or assign any exclusive right under 17 U.S.C. §106, it fails to even mention these exclusive rights. The power of attorney document does not impact F&D's right to enforce any copyrights or give any party standing to file a copyright infringement claim. It is exactly what it claims to be: a power of attorney agreement. It cannot possibly support any argument regarding F&D's standing in this case.

As such the document submitted as Exhibit C is irrelevant and should be excluded.

### ii. EXHIBIT D – License to Distributor 1

The License Agreement to Distributor 1, Exhibit D, is relevant only as it might apply to conduct after Oct. 1, 2016. Exhibit D, p. 2, ("License Period" defined.), p 10. F&D filed its initial complaint on July 16, 2016 for observed infringing activity before this License Agreement was in effect. ECF. 1. As per the pending First Amended Complaint, the Defendant's infringing activity was from prior to May 31, 2016 (Ecf. 10, P. 3, Para 21) through at least September 13, 2016. Ecf 10, p. 6, Para 37.

It is admitted in Defendant's motion that the License Agreement to Distributor 1 – Exhibit D, is limited and does not convey all rights or divest F&D of its ability to bring its claim. But as this license does not convey or alienate *any interest during the time of Defendant's infringement*, the agreement is irrelevant and should be excluded.

### iii. EXHIBIT B - The Sales Agency Agreement

F&D's Sales Agency Agreement, identified as Exhibit B to Defendant's Motion, is also irrelevant to Defendant's arguments. This is because the agreement does not license, assign, transfer or convey any exclusive right under 17 U.S.C. 106. In fact, the agreement makes absolutely clear that it is one of limited agency, and more accurately described as an engagement for services wherein F&D, as the Producer, hired a sales agent to act on behalf of F&D and provide specific services related to sales. Indeed, the agreement states that it is an agreement where Producer engages "the services of Sales Agent as the authorized signatory, sales, collections and servicing agent for the [work] in the Territory[.]" Exhibit B, p. 1. Additionally, the agreement makes clear that the Sales Agent has no right to exploit the motion picture itself, but only to act "as Producer's exclusive sales agent to negotiate and execute in the Sales Agent's name (on behalf of Producer) agreements with third party distributors and licenses (individually, a "Distributor" and collectively, the "Distributors") for the exploitation of the Rights in the Territory during the Term." Exhibit B, p. 2, Sec. 3(c). "The exclusive right to grant licenses for others […] [to] reproduce a work is separate and distinct from the exclusive [right] […] [to] reproduce a work itself […] Therefore, licensing agents are not legal owners of section 106 exclusive rights[.]" *Premier Tracks, LLC v. Fox Broad. Co.*, No. 12-CV-01615 DMG (PJWx), 2012 U.S. Dist. LEXIS 189754, at *19 (C.D. Cal. Dec. 18, 2012); *See also, Bourne Co. v. Hunter Country Club, Inc.*, 990 F.2d 934, 937 (7th Cir. 1993) ("A licensing agent is neither the legal nor the beneficial owner of the copyright and has no interest in the copyright."). Here, while the Sales Agency Agreement might vest the Sales Agent with the right to license to others *on behalf of the Plaintiff,* not a single §106 right is conveyed to the Sales Agent for the Sales

RESPONSE – MSJ, ECF 36     Page 5 of 13

CROWELL LAW
WWW.CROWELL-LAW.COM

Agent to hold. Accordingly, this agreement has no bearing on Plaintiff's standing to sue for copyright infringement, is irrelevant, and should be excluded.

IV. **ARGUMENTS**

   a. **EXHIBIT A - The copyright certificate establishes that F&D is the sole and exclusive owner of *Fathers & Daughters,* and therefore F&D has standing.**

"The legal *or* beneficial owner of an exclusive right under a copyright is entitled . . . to institute an action for any infringement of that particular right *committed while he or she is the owner of it.*" 17 U.S.C. § 501(b) (emphasis added); *UMG Recordings, Inc. v. Disco Azteca Distribs.*, 446 F. Supp. 2d 1164, 1172 (E.D. Cal. 2006). While Defendant argues much about the licenses granted by F&D to others at various times, the statute makes clear that the conditions for standing are in the disjunctive *"or"* and standing vests in both the legal owner and the beneficial owner of a right. Defendant in all his arguments at best argues that others may also have standing to file suit for infringement. But nothing in any of the agreements divests F&D of its standing as an undisputed owner.

Granting multiple parties standing to sue for infringement is well established as rights under the Copyright Act "may be chopped up and owned separately, and each separate owner of a subdivided exclusive right may sue to enforce that owned portion of an exclusive right, no matter how small." *Silvers v. Sony Pictures Entm't, Inc*., 402 F.3d 881, 887 (9th Cir.2005) (*en banc*). But arguing that one party may have standing as an exclusive licensee does not itself divest the owner of standing. Should Defendant be correct in part, at most he may face additional liability to additional parties.

CROWELL LAW
WWW.CROWELL-LAW.COM

As listed in F&D's Copyright Registration Certificate, Reg. No. PAu 3-762-811 (Exhibit A), the validity of which is not contested, Fathers & Daughters Nevada, LLC is the sole and exclusive owner of the motion picture *Fathers & Daughters*. This is undisputed by Defendant, F&D, the Sales Agent, Distributor 1, and Distributor 2. No other documents transfer or assign F&D's copyright to any third party. As such, under the law and as per the Copyright Registration Certificate F&D has standing to bring its direct copyright infringement claim against Defendant as the owner.

### b. EXHIBIT B – F&D's Sales Agency Agreement is a service agreement and does not impact its standing to bring a claim.

As reviewed above (Evidentiary Objections), F&D's Sales Agency Agreement does not license, assign, transfer or convey any exclusive right under 17 U.S.C. 106 and is therefore irrelevant.

### c. EXHIBIT D – F&D's Agreement with Distributor 1 did not transfer ownership of the copyright or impact F&D's standing to bring its claim.

#### i. The agreement with Distributor 1 does not impact any rights during the time of Defendant's infringing activity.

As reviewed above (Evidentiary Objections), the relevant agreement of Exhibit D did not impact any rights during the time of Defendant's infringing conduct. Exhibit D, is relevant only after Oct. 1, 2016, a time period not at issue in this action.

#### ii. F&D and Distributor 1 have a limited license agreement that does not impact ownership or standing.

Even if the Agreement of Exhibit D were considered, it would not divest F&D of standing. "[A] license is an authorization by the copyright owner to enable another party to

engage in behavior that would otherwise be the exclusive right of the copyright owner, but without transferring title in those rights." *F.B.T. Prods., LLC v. Aftermath Records*, 621 F.3d 958, 965 (9th Cir. 2010). "[I]t is well settled that where a copyright owner transfers a copy of copyrighted material, retains title, limits the uses to which the material may be put, and is compensated periodically based on the transferee's exploitation of the material, the transaction is a license." *Id.* Where an agreement imposes limitations *not generally associated with legal title*, the agreement has *not* conveyed ownership of the copyright. *Minden Pictures, Inc. v. John Wiley & Sons, Inc.*, 795 F.3d 997, 1003 (9th Cir. 2015) (emphasis added).

Here, F&D's[1] Agreement with Distributor 1 (Exhibit D) is clearly a license agreement which does not transfer or assign the copyright title to the Distributor 1. Further, the agreement is limited and limits use of the work in the following ways: (1) The agreement geographically limits Distributor 1 to display the work only in the United States (including territories), Bermuda, and the Bahamas (Exhibit D, p. 3, Sec. 1(M), Territory); (2) The agreement limits display of the work by means of Subscription Video on Demand and Pay Television, meaning Distributor 1 is permitted to display the work through broadcast television only, (Exhibit D, p. 4, Sec. 3, Grant of Rights); and (3) Distributor 1's exhibition of the work is limited to a license period from October 1, 2016 to March 31, 2018. Exhibit D, p. 10, (Exhibit A To License Agreement). Further, as outlined in paragraph 6 of the agreement, there is a payment schedule clearly reserving a beneficial ownership interest to F&D.

Nothing in the agreement of Exhibit D divests F&D of standing as an owner.

---

[1] Defendant incorrectly argues that since the Sales Agent (and not F&D) is a party to this agreement with Distributor 1, it proves that F&D granted all of its exclusive rights to Sales Agent. Defendant conveniently fails to mention that Nicolas Chartier, Voltage Picture's Chief Executive Officer, signed this agreement on behalf of the Sales Agent. And, Voltage Pictures is the Managing Member of Fathers and Daughter Nevada, LLC.

RESPONSE – MSJ, ECF 36  Page 8 of 13

### d. EXHIBIT E – F&D's agreement with Distributor 2 did not a transfer ownership of the copyright or impact its standing to bring a claim.

#### i. Plaintiff and Distributor 2 have a limited licensing agreement.

"The Copyright Act authorizes only two types of claimants to sue for copyright infringement: (1) owners of copyrights, and (2) persons who have been granted exclusive licenses by owners of copyrights." *Eden Toys, Inc. v. Florelee Undergarment Co.*, 697 F.2d 27, 32 (2d Cir. 1982). The Ninth Circuit has stated that a copyright owner still has standing to bring a copyright infringement claim even if another party holds an exclusive license. *Minden,* 795 F.3d at 1005, (Stating that the copyright holder and the licensee with an exclusive license both have standing.). Indeed, in *Minden*, the Ninth Circuit found that when a licensee has been granted one or more exclusive rights which are shared with the copyright owner, *both* parties retain standing to sue. *Id.* Here, F&D is not only the owner, but an owner who has clearly reserved a number of reproduction and distribution rights to itself. Therefore, F&D has standing to sue Defendant for infringement of its work.

#### ii. The license granted to Distributor 2 (Exhibit E) is highly restricted reserving many rights exclusive to F&D.

Defendant believes that because F&D provided Distributor 2 with an exclusive, though highly restricted license to distribute the work through specific means, it has given up each and every one of its several exclusive rights under 17 U.S.C. 106 and lost standing. Defendant is wrong. 17 U.S.C. § 106 provides a number of exclusive rights, each of which may be further subdivided and assigned to multiple parties allowing for a theoretical countless number of exclusive rights holders with standing. *Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137, 1146 (9th Cir. 2008). ("[E]xclusive rights may be chopped up and owned separately, and each

separate owner of a subdivided exclusive right may sue to enforce that owned portion of an exclusive right, no matter how small.")

Here, F&D did not convey all of its exclusive rights under 17 U.S.C. 106 to Distributor 2. For example, F&D reserved *all* its exclusive rights with respect to the exploitation of the work on airlines and oceangoing vessels. Exhibit E, p. 3, Sec. 4(b) (Territory). Additionally, Distributor 2's right to distribute and otherwise exploit the work is geographically limited to the United States and US territories. Exhibit E, p. 2, Sec. 4(a) (Territory). This limitation is reinforced with the requirement that Distributor 2 may only use distribution systems that have "Access Security" (See Exhibit E, p. 7, Sec. 7, d. ii) and any online distribution must employ geo-blocking technology "to ensure that accessing, streaming or downloading of the Picture is limited solely to end users whose habitual residence is verifiably located within the Territory and to computers whose Internet addresses are verifiably located with the Territory…" Exhibit E, p. 7, Sec. 7, d. iii.[2]

A number of other restrictions are also placed on Distributor 2, including the requirement that Distributor 2 may only distribute the motion picture with Digital Rights Management ("DRM") technology to prevent the content provided Distributor 2 from being easily copies or pirated by others. Exhibit E, p. 7, Sec. 7(d)(iv); *See also*, 17 U.S.C. § 1201, criminalizing DRM circumvention.

Defendant's use of BitTorrent to download and upload F&D's work is not covered by Distributor 2's license and therefor represents a right reserved to F&D as BitTorrent copying and

---

[2] Geo-blocking is a common means of using a party's IPA to check the location of a party using the Internet to ensure they reside in a specific geographic location. This technology allows a broadcaster to provide content through the Internet in a country like Canada, but when the web page is visited by a party using an IPA located in the United States, access to the content can be denied.

distribution is nothing short of the unauthorized non-geo-blocked *worldwide* reproduction and distribution of F&D's work and a complete circumvention of the required DRM. Dec. Wickstrom, ¶ 19 – 21.

F&D's license agreement with Distributor 2 does not grant Distributor 2 the authority for worldwide distribution of the work via BitTorrent. This is because the primary goal of the agreement is to preserve revenue from the controlled distribution of the work – which is impossible if the work is distributed through BitTorrent. In fact, F&D's reservation of the BitTorrent distribution channel is clearly evidenced by paragraph 7(c)(iii), wherein F&D informs Distributor 2 that it will pursue infringers who download and distribute the work via peer-to-peer file sharing networks and BitTorrent. Exhibit E, p. 6, Sec. 7(c)(iii) ("[Distributor 2] agrees to support [F&D] in the exercise of the Anti-Piracy Rights…") Simply put, F&D reserved its exclusive rights with respect to the uncontrolled worldwide reproduction and distribution of the work and through any means that does not employ DRM or geo-blocking such as BitTorrent.

These rights reserved to F&D are valuable, if not essential, and relied on by F&D and others. Dec. Wickstrom, ¶ 14 – 21. For clarification purposes, F&D, the Sales Agent, and Distributor 2 also executed an "Anti-Piracy and Rights Enforcement Reservation of Rights Addendum," wherein the parties expressly affirm that all rights to distribute the work via means such as BitTorrent are reserved to F&D. Exhibit G, ("… all peer-to-peer digital rights (BitTorrent, etc.) in the Picture, including international rights, are reserved to Fathers & Daughters Nevada, LLC…"). Accordingly, F&D reserved and exclusively owns the valuable international distribution rights and other exclusive right to reproduce and distribute the work through uncontrolled channels such as the BitTorrent network and therefore F&D has standing to sue Defendant for copyright infringement of its work via BitTorrent.

> iii. In the alternative, F&D remains a beneficial owner of the copyright and therefore has standing to sue Defendant.

"The legal or beneficial owner of an exclusive right under a copyright is entitled […] to institute an action for any infringement of that particular right committed while he or she is the owner of it." 17 U.S.C. § 501. "District courts in the Ninth Circuit have narrowly defined 'beneficial owner' as being *only* an individual who had legal title and parted with it in exchange for royalties." *Minden Pictures, Inc. v. John Wiley & Sons, Inc.*, 10 F. Supp. 3d 1117, 1130 (N.D. Cal. 2014); *See also, Love v. Mail on Sunday*, No. CV 05-7798 ABC (PJWx), 2006 U.S. Dist. LEXIS 95456, at *28 (C.D. Cal. Aug. 15, 2006), quoting H.R.Rep No. 1476 9th Cong., 2d Sess. 159 ("A 'beneficial owner' [also] includes an author who had parted with legal title in exchange for percentage royalties based on sales or license fees."). "[A] beneficial owner [has] standing to sue for copyright infringement." *Skidmore v. Led Zeppelin*, No. CV 15-3462 RGK (AGRx), 2016 U.S. Dist. LEXIS 51006, at *30 (C.D. Cal. Apr. 8, 2016).

Even if F&D had parted with all rights and effective legal title to its copyright, which it did not, the agreement expressly states that F&D is still entitled to 'Licensor Net Receipts' derived from Distributor 2's exploitation of the work giving it standing. Exhibit E, p. 8, Sec. 9; *Minden*, 10 F. Supp. 3d 1130. As such, a finding that F&D 'parted with legal title' in exchange for royalties based on sales does not impact standing to bring this action as F&D continues to directly benefit from Distributor 2's exploitation of the Work, and thus F&D remains a beneficial owner under the Copyright Act with standing to bring a claim for infringement.

## V. CONCLUSION

As outlined above, F&D retains standing to bring claims for copyright infringement as an undisputed owner of the motion picture *Fathers & Daughters*, and as a party that has retained a number of valuable exclusive rights under the Copyright Act. For the foregoing reasons, F&D respectfully request that this Court deny Defendant's Motion for Summary Judgment.

DATED: October 26, 2017.

Respectfully submitted,

CROWELL LAW

*/s/ Carl D. Crowell*
Carl D. Crowell, OSB No. 982049
carl@crowell-law.com
503-581-1240
Of attorneys for Plaintiff F&D