David H. Madden
Mersenne Law
9600 S.W. Oak Street
Suite 500
Tigard, Oregon  97223
(503)679-1671
ecf@mersenne.com

<br>

# United States District Court

## District of Oregon

### Portland Division

| | |
|---|---|
| **FATHERS & DAUGHTERS NEVADA, LLC,** | Civil Action No.:....................3:16-cv-1443-SI |
| *Plaintiff* | **REPLY BRIEF IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |
| *v.* | |
| **Lingfu ZHANG,** | [ORAL ARGUMENT REQUESTED] |
| *Defendant* | |

Defendant Lingfu ZHANG submits the following Reply Brief in support of his Motion for Summary Judgment.

3:16-cv-1443-SI
Page 1

*Reply in Support of Defendant's Motion for Summary Judgment*
*[Submitted UNDER SEAL pursuant to Protective Order, dkt. #23]*

## Synopsis

Plaintiff FATHERS & DAUGHTERS NEVADA LLC ("F&D") sued Defendant ZHANG for allegedly downloading the movie *Fathers & Daughters* over the Internet using a "BitTorrent" computer program. ZHANG denies downloading the movie (and Plaintiff has been unable to produce any evidence of the alleged download) but Defendant's current motion for summary judgment challenges a different portion of F&D's case: Defendant argues that F&D has alienated all of the relevant rights necessary to sue for infringement under the Copyright Act, leaving it without standing *per Righthaven* and its progeny.

Plaintiff's opposition nit-picks some supporting evidence and mischaracterizes the contents of its own agreements and Defendant's opening brief; but overall, F&D focuses on the wrong question, attempting to establish that it still owns *some* rights in the movie, rather than whether it owns the specific right necessary for it to proceed – a right which it clearly does not have.

## Evidentiary Concerns

### License to Distributor 1

Plaintiff argues that the license to DISTRIBUTOR 1[1] is irrelevant because its term did not overlap the time of the alleged infringement. Fair enough: Defendant only presented the license in support of the proposition that F&D's agreement with EXCLUSIVE SALES AGENT was a legitimate business arrangement, and not a mere sham document ginned up to support Plaintiff's copyright litigation campaign. (*See*, *e.g.*, dkt. 36 at 9.) For judicial efficiency, the agreement with DISTRIBUTOR 1 may be disregarded.

---

[1] Motion for Summary Judgment, dkt. 36, Exhibit D

3:16-cv-1443-SI  
Page 2  
Reply in Support of Defendant's Motion for Summary Judgment  
[Submitted UNDER SEAL pursuant to Protective Order, dkt. #23]

EXCLUSIVE SALES AGENCY AGREEMENT

Plaintiff also argues that the Sales Agency Agreement[2] is irrelevant. But that agreement plainly invests EXCLUSIVE SALES AGENT with all of the rights and privileges once held by F&D, including rights and privileges F&D now claims to still possess itself. As Defendant pointed out in his opening brief, if the Sales Agency Agreement was the only writing affecting ownership of rights in *Fathers & Daughters*, then EXCLUSIVE SALES AGENT would have been the proper plaintiff, under *Minden Pictures v. John Wiley & Sons*, 795 F.3d 997 (9th Cir. 2015).

When the legal issue is whether a party possesses a right necessary to bring its suit, it is unclear how a document transferring the right from the party to a different entity could possibly be considered irrelevant. At a minimum, Plaintiff ("Producer") must explain away ¶3c:

> Subject to the terms and conditions hereof, Producer hereby appoints Sales Agent as Producer's exclusive sales agent to negotiate and execute in the Sales Agent's name (on behalf of Producer) agreements with third party distributors and licensees (individually, a "Distributor" and collectively, the "Distributors") for the exploitation of the Rights in the Territory during the Term, including the right to procure, enter into and sign agreements for the exploitation of the Rights in the Picture ("Distribution Agreements" and, each, a "Distribution Agreement").

and ¶3e:

> The parties agree that expressly included within the Rights is the sole and exclusive right of all benefits and privileges of Producer in the Territory, including the exclusive right to collect (in Sales Agent's own name or in the name of Producer and Producer hereby appoints Sales Agent as Producer's irrevocable lawful attorney-in-fact solely for such purpose), receive, and retain as Gross Receipts any and all royalties, benefits, and other proceeds derived from the ownership of and/or the use, reuse, and exploitation of the Picture (and any and all rights therein) in the

*Motion for Summary Judgment, Exhibit B, p. FnD-16-01443-01203*

It has not done so. This document is self-evidently relevant, because it bears on a fact of consequence to the determination of the present motion, namely:

**Who owns the right to distribute *Fathers & Daughters* over the Internet?**

The document establishes that it is EXCLUSIVE SALES AGENT, and *not* Plaintiff, who owns

---

[2] Motion for Summary Judgment, Exhibit B

that right.  (Of course, the determinative right has changed hands again, and now apparently belongs to DISTRIBUTOR 2, but Exhibit B is important for the Court to understand how the right got where it is now, and the degree to which Plaintiff's claim to it is flawed.)

## Plaintiff's Evidence is Irrelevant

Plaintiff's Opposition presents only the Declaration of Michael WICKSTROM, who shares many opinions about the written agreements.  This is the worst kind of self-serving parol evidence, since the agent and licensee whose rights WICKSTROM would curtail are not present to dispute his crabbed reading of their agreements. But his opinions are irrelevant in any event, because 35 U.S.C. § 204(a) provides: "A transfer of copyright ownership, other than by operation of law, is not valid unless an instrument of conveyance, or a note or memorandum of the transfer, is **in writing and signed by the owner of the rights conveyed** or such owner's duly authorized agent" (emphasis added; § 101 defines "transfer of ownership" to include "assignment, mortgage, exclusive license, or any other conveyance, alienation, or hypothecation of a copyright or of any of the exclusive rights comprised in a copyright, whether or not it is limited in time or place of effect.")  Mr. WICKSTROM's opinions are not effective to alter the allocation of rights established by the written agreements on which Defendant relies, so his declaration should be disregarded.

## Plaintiff Lacks Standing

Standing to bring an action under the Copyright Act does not belong to any party who has *some* interest in the copyright, but only to "[t]he legal or beneficial <u>owner of an exclusive right</u> […] to institute an action for any <u>infringement of that particular right</u> committed <u>while he or she is the owner of it</u>." 17 U.S.C. § 501(b), emphasis added.  Plaintiff goes to great lengths to

3:16-cv-1443-SI  
Page 4

Reply in Support of Defendant's Motion for Summary Judgment  
[Submitted UNDER SEAL pursuant to Protective Order, dkt. #23]

establish that it has not alienated all of its rights in the film, but those efforts miss the point. Plaintiff claims, for example, that it still owns the right to exploit the movie on airlines and oceangoing vessels. That may or may not be true – Plaintiff has not submitted any evidence on the question – but ZHANG is not accused of showing the movie on an airplane or a cruise ship. He is accused of downloading it over the Internet, which is an infringement that affects *only* an exclusive right owned by non-party DISTRIBUTOR 2:

> v. *"Digital Rights"*: the exclusive right to distribute, license, sublicense, lease, rent, exhibit, promote, market, advertise, publicize and otherwise exploit the Picture and all elements thereof, and to authorize others to do all of the foregoing, by and in connection with any and all means of dissemination to members of the public via the internet, "World Wide Web" or any other form of digital, wireless and/or Electronic Transmission (as defined below) now known or hereafter devised, including, without limitation, streaming, downloadable and/or other non-tangible delivery to fixed and mobile devices, platforms and services, whether now known or hereafter devised. *"Electronic Transmissions"* means any transmission of the Picture, whether sound alone,

*Motion for Summary Judgment, Exhibit E, p. VERT-0003*

This is the "elephant in the room," which Plaintiff does not even acknowledge, let alone attempt to explain. (Note that Plaintiff's claim that Defendant's opening brief "fails to cite *any* language in *any* agreement which establishes that Plaintiff assigned or transferred all of its exclusive rights under 17 U.S.C. § 106" (dkt. 38 at p. 2) is transparently false. Defendant's brief[3] quoted the exact provision reproduced above because it is the provision at the heart of Defendant's challenge to standing.)

And as Exhibit E, ¶ 7.a.v is at the heart of Defendant's challenge, section IV.d.i of Plaintiff's opposition (dkt. 38, p. 9) is the clearest statement of Plaintiff's error. Plaintiff asserts "F&D is not only the owner, but an owner who has clearly reserved a number of reproduction and distribution rights to itself. Therefore, F&D has standing to sue Defendant for infringement of its work." This assertion is without citation to authority, because no authority supports it. F&D may have reserved some rights – to planes and ocean liners, perhaps – but it has not reserved any right that

---

[3] Dkt. 36, pp. 9–10

3:16-cv-1443-SI  
Page 5

*Reply in Support of Defendant's Motion for Summary Judgment*  
*[Submitted UNDER SEAL pursuant to Protective Order, dkt. #23]*

Defendant is alleged to have infringed.  Thus, although Plaintiff may have standing to sue airborne and seafaring infringers, it cannot sue Internet downloaders.

## ALLEGEDLY RESERVED RIGHTS

Plaintiff argues that its license to DISTRIBUTOR 2 is "highly restricted, reserving many rights exclusive to F&D," but this is not even a remotely accurate characterization of the "sole and exclusive right, license and privilege[s]" conveyed by Section 7.[4]  It would be pointless to delve into the details of "Theatrical Rights," "Non-Theatrical Rights," "Videogram Rights," "Television Rights," "PPV/VOD Rights," and "Incidental Rights" because these are no more relevant than the airline and cruise-line rights Plaintiff claims to hold.  But it is difficult to discern the "many rights" reserved from purportedly "highly restricted" paragraph v:

> v. **"Digital Rights"**: the exclusive right to distribute, license, sublicense, lease, rent, exhibit, promote, market, advertise, publicize and otherwise exploit the Picture and all elements thereof, and to authorize others to do all of the foregoing, by and in connection with any and all means of dissemination to members of the public via the internet, "World Wide Web" or any other form of digital, wireless and/or Electronic Transmission (as defined below) now known or hereafter devised, including, without limitation, streaming, downloadable and/or other non-tangible delivery to fixed and mobile devices, platforms and services, whether now known or hereafter devised. **"Electronic Transmissions"** means any transmission of the Picture, whether sound alone, sound coupled with an image, or sound coupled with data, in all forms and formats of electronic and/or data transmissions or streaming or downloads or embeds, including, without limitation, transmissions or downloads via IP protocol, computerized or computer-assisted media, cable, satellite, fiber-optic means or wireless transmission, by way of television video-on-demand, internet video on-demand (**"IVOD"**), transactional video-on-demand (**"TVOD"**), ad-supported video-on-demand (**"AVOD"**), free video-on-demand (**"FVOD"**), near video-on-demand (**"NVOD"**) and subscription video-on-demand (**"SVOD"**), as well as downloads to storage and/or portable devices or wireless devices, including, without limitation, mobile telephones and other wireless communications devices, applications or by any other means facilitated by wholesalers, distributors, sub-licensors, or other intermediaries, and all other technologies, both now or hereafter known or devised.

<em>Motion for Summary Judgment, Exhibit E, p. VERT-0003–04</em>

"Any and all means of dissemination to members of the public via the internet" squarely covers what Defendant is alleged to have done.  Yet DISTRIBUTOR 2's rights – even just its "Digital Rights" – are much broader than that; there is no suggestion that these rights were meant to be curtailed in the way Plaintiff's declarant WICKSTROM now urges.

---

[4] Exhibit E, dkt. 36-5, pp. VERT-0002–04

3:16-cv-1443-SI  
Page 6

Reply in Support of Defendant's Motion for Summary Judgment  
[Submitted UNDER SEAL pursuant to Protective Order, dkt. #23]

By contrast, the portions of the license that *do* clearly reserve rights are much more restrained:

> i. Licensor reserves all clip rights, stock footage, exploitation rights with respect to airlines and ships, merchandising, soundtrack, sequel, prequel, remakes, spin-offs and royalties from re-transmission and other collection agencies.

and

> ii. DISTRIBUTOR 2 and Licensor hereby acknowledge and agree to the exclusive license to DISTRIBUTOR 1 to exploit the Television Rights in the Territory via "Pay-TV" only and during the first Pay-TV window only (as such terms are commonly defined and understood in the United States motion picture distribution industry) pursuant to that certain license agreement between DISTRIBUTOR 1 and Licensor

*Motion for Summary Judgment, Exhibit E, p. VERT-0004*

The "geographic" and "Digital Rights Management" material Plaintiff mentions is in a different section, applies to a different licensed right, and is presented as a *proviso*, not as a right reserved to the Licensor, so that irregularity in DISTRIBUTOR 2's activities might give rise to a breach-of-contract action against it, but not to an infringement suit.

More interesting among the reserved "rights" is paragraph iii, discussed at p. 10 of Defendant's opening brief:

> iii. Licensor retains the right to pursue for damages, royalties and costs those individuals unlawfully downloading and distributing the Picture via the Internet, including, but not limited to, those individuals identified as using peer-to-peer file sharing networks, and/or Closed Network means (*e.g.*, piracy, illegal downloads, Bit Torrents, etc.) in the Territory (the **"Anti-Piracy Rights"**). The Anti-Piracy Rights retained by Licensor include the right to pursue copyright infringers in relation to works created or derived from the rights licensed pursuant to this Agreement, including, but not limited to, foreign language/dubbed versions of the Picture. DISTRIBUTOR 2 agrees to support Licensor in the exercise of the Anti-Piracy Rights and all reasonable requests for support shall not be withheld. If Licensor deems appropriate, upon written request, DISTRIBUTOR 2 agrees to assign

*Motion for Summary Judgment, Exhibit E, p. VERT-0004*

Recall that "Licensor" in this agreement refers to EXCLUSIVE SALES AGENT, *not* Plaintiff; and further recall that the "right to pursue for damages" is *not* a right under §106 that may be exercised in the courts of this circuit.

As Defendant argued in his opening brief, even EXCLUSIVE SALES AGENT has failed to reserve the right necessary to give it standing in any of F&D's cases. Plaintiff, being at least two steps removed from possession of that right, does not even present a close question.

3:16-cv-1443-SI  
Page 7

*Reply in Support of Defendant's Motion for Summary Judgment*  
*[Submitted UNDER SEAL pursuant to Protective Order, dkt. #23]*

## No Liability to Multiple "Exclusive" Licensees

Plaintiff suggests that a defendant may turn out to be liable to multiple parties for infringement of an exclusive right. In this suggestion, it has stumbled onto an important principle, but ends up on the wrong side of the analysis. As an initial matter, it does not make sense for two plaintiffs to own – and be able to enforce separately – the same exclusive right – either one owns it, or the other does, or they are joint owners. Whichever is the case, the requirement of § 501(b) that "the owner" institute infringement proceedings ensures that the court can finally and completely resolve a dispute over an alleged infringement.

Plaintiff's suggested arrangement would allow a §106 right to be split up arbitrarily, and each holder of a sliver of the right would be entitled separately to pursue the same defendant for the same conduct (and obtain, apparently, full statutory damages therefor). It confuses the divisibility of *rights* (which is well-supported under the law) with purported divisibility of *exclusivity* (which is not supported at all). Although the §505 attorney fees on these actions would be a bonanza for certain attorneys, the idea is a non-starter for both statutory and logical reasons.

## Plaintiff Lacks Standing as a Beneficial Owner

Finally, Plaintiff suggests that it has standing as a "beneficial owner" of the right infringed. Specifically, it argues that it is entitled to receive "Licensor Net Receipts" from DISTRIBUTOR 2's exploitation of the work. Unfortunately for this theory, "Licensor" in the DISTRIBUTOR 2 license is EXCLUSIVE SALES AGENT, *not* Plaintiff. On the documents in the record, Plaintiff is not entitled to any further compensation for the rights now owned by others. Presumably, the financial terms of the deals (which have mostly been redacted by Plaintiff) were both acceptable and favorable to it. If Plaintiff wishes to supplement its receipts with the proceeds of these Internet BitTorrent lawsuits, then it must negotiate with EXCLUSIVE SALES AGENT's

3:16-cv-1443-SI
Page 8

Reply in Support of Defendant's Motion for Summary Judgment
[Submitted UNDER SEAL pursuant to Protective Order, dkt. #23]

licensees to repurchase the exclusive right to transmit and receive the movie over the Internet. Only then can F&D pursue infringers – for downloads that happen while it owns that exclusive right.

## Conclusion

Plaintiff FATHERS AND DAUGHTERS NEVADA LLC possesses neither the exclusive right alleged to have been infringed, nor even the right to authorize another to exercise that exclusive right.  The entities that appear – on the undisputed evidence presently before the Court – to hold those rights are not parties, notwithstanding that they are obliged to assist F&D at the latter's request.  They have not been party to any of the other ten (10) cases in this Court, nor to any of the thirty (30) cases it has filed in other Districts.[5]

Even if Defendant had actually committed the infringing act he is accused of, he would not be liable to F&D.  The Court can craft no remedy between Plaintiff and Defendant that affects – even tangentially – the injury that the actual rightsholder has allegedly suffered.  Permitting Plaintiff to proceed with this suit is indistinguishable from permitting *any other person or entity* to sue for the same alleged injury.

There is no material dispute about the evidence of allocation of rights, and indeed, because of the statute-of-frauds–like provision of 17 U.S.C. § 204(a), there is no other evidence that could affect the outcome of that question.  Further, the legal effect of written agreements is a question for the Court, not one for the jury.

Therefore, the case is in condition for disposal on the merits on the evidence presently in the record.  And the proper disposition is clear: under 17 U.S.C. §501(b), *Silvers, Righthaven,*

---

[5] Numbers are computed from Plaintiff's RFP response; not all cases list F&D in the caption.  A PACER search returns thirty (30) "FATHERS & DAUGHTERS" cases and thirteen (13) "FATHERS AND DAUGHTERS" cases.  Cases target up to thirty-two (32) individuals each.

3:16-cv-1443-SI  
Page 9

*Reply in Support of Defendant's Motion for Summary Judgment*  
*[Submitted UNDER SEAL pursuant to Protective Order, dkt. #23]*

*Minden* and *DPK Photo*, Plaintiff F&D cannot maintain its case against Defendant ZHANG.

The Court should DISMISS THE PRESENT ACTION WITH PREJUDICE.

Respectfully submitted,


9 November 2017
_____      _____
         Date                     David H. Madden, SBN OR080396
                                      Attorney for Defendant Lingfu ZHANG
                                      dhm@mersenne.com
                                      (503)679-1671